UNITED STATES of America,
Plaintiff,

v.

Aaron HAYNES, Defendant.

No. CRIM.01–20247–D.

United States District Court,
W.D. Tennessee,
Western Division.

May 15, 2003.

See, also, 242 F. Supp.2d 540.

Jacob E. Erwin, Wagerman Law Firm, Howard L. Wagerman, Esq., Wagerman Law Firm, Robert L. Hutton, Esq., Glankler Brown, PLLC, William D. Massey, Esq., Massey & McClusky, Arthur E. Quinn, Esq., The Bogatin Law Firm, Paula Skahan, Esq., The Skahan Law Firm, Memphis, for Aaron S. Haynes (1), Terance Johnson (2), William O. Maxwell (3), defendants.

Thomas L. Parker, Esq., Tony R. Arvin, Esq., U.S. Attorney's Office, Memphis, for U.S. Attorneys.

### MEMORANDUM OPINION GRANTING DEFENDANT'S JURY INSTRUCTION MOTION

DONALD, District Judge.

This matter is before the Court on Defendant Aaron S. Haynes' motion to in-

struct the jury that a sentence of death is never required pursuant to sections 3591(a) and § 3593(e) of the Federal Death Penalty Act, 18 U.S.C. § 3591, *et seq.* (West 2000) ("FDPA"). (Dkt.# 463). Defendant contends that the legislative history of the FDPA makes clear that the jury retains discretion over whether to impose a sentence of death even if the aggravating factor(s) "sufficiently outweigh" any mitigating factor(s). Def.'s Mot. and Mem. at ¶¶ 1–9. As a result, Defendant argues, the Court may instruct the jury that they are never required to impose the death penalty. *Id.* at ¶¶ 10–11. Finally, Defendant states that providing juries with this type of instruction comports with the practice of a majority of district courts conducting FDPA sentencing hearings. *Id.* at ¶ 12.

In response, the United States contends that this Court should not allow the discretionary jury instruction proposed by Defendant based on the reasoning of the Eighth Circuit in *United States v. Allen,* 247 F.3d 741, 780–81 (8th Cir.2001), *vacated and remanded on other grounds,* 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), *United States v. Ortiz,* 315 F.3d 873, 900–01 (8th Cir.2002), and the Eighth Circuit Model Death Penalty Instruction. Gov't. Resp. at 1–2. The United States further contends that 1) the legislative history of the FDPA supports their construction of the statute; 2) *Allen* and *Ortiz* appear to be the only appellate decisions on point; and 3) allowing the jury discretion sought by Defendant would lead to an unconstitutionally arbitrary jury decision regarding imposition of the death penalty. *Id.* at 2–5.

For the following reasons, the Court finds that nothing in the FDPA precludes affording juries the flexibility to choose whether to impose the death penalty even after finding that the aggravating factor(s) outweigh any mitigating factor(s). Moreover, the Court finds that the FDPA contemplates such discretion. The Court finds, therefore, that providing a jury instruction articulating this discretion is appropriate. Accordingly, the Court grants Defendant's motion.

## I. *Construing the FDPA*

### A. The text of the FDPA

When a court engages in statutory interpretation,[1] it "begins by examining the text" of the statute. *Carter v. U.S.,* 530 U.S. 255, 120 S.Ct. 2159, 2162, 147 L.Ed.2d 203 (2000). The operative language of the FDPA's provisions regarding jury deliberation comes from §§ 3591(a) and 3593(e):

> A defendant who has been found guilty of [an offense for which the death penalty is provided and one of the four requisite mental culpability factors] shall be sentenced to death if, after consideration of the [aggravating and mitigating] factors [ ] in the course of a hearing held pursuant to section 3593, it is determined that imposition of a sentence of death is justified . . . .

18 U.S.C. § 3591(a).

> If, in the case of [an offense for which the death penalty is provided and for which an aggravating factor required to be considered is found to exist], the jury . . . shall consider whether all the aggravating factor or factors found to exist sufficiently outweigh all the mitigating

---

1. The Court notes that there is no Constitutional requirement for juror discretion regarding imposition of the death penalty once the jury has found the existence of at least one aggravating factor and has had an opportunity to assess potential mitigating factors. *See*

*Blystone v. Pennsylvania,* 494 U.S. 299, 110 S.Ct. 1078, 108 L.Ed.2d 255 (1990). Accordingly, the only question before this Court is whether the FDPA itself electively affords jurors the degree of discretion claimed by Defendant.

factor or factors found to exist to justify a sentence of death, or, in the absence of a mitigating factor, whether the aggravating factor or factors alone are sufficient to justify a sentence of death. Based upon this consideration, the jury by unanimous vote ... shall recommend whether the defendant should be sentenced to death, to life imprisonment without possibility of release or some other lesser offense.

18 U.S.C. § 3593(e).

Put more succinctly, § 3591(a) states that the jury shall impose the death penalty only "if, *after consideration* of the [aggravating and mitigating] factors" during the sentencing hearing, "it is *determined* that imposition of a sentence of death is *justified.*" 18 U.S.C. § 3591(a) (emphasis added). The plain meaning of this section is that the jury must initially "consider" the aggravating and mitigating factors and subsequently make a determination that the death penalty is "justified."

In condensed form, § 3593(e) states that the jury "shall *consider* whether all the aggravating factor[s] found to exist *sufficiently outweigh* all the mitigating factor[s] found to exist [or, if no mitigating factors exist, whether the aggravating factor(s) alone are sufficient] *to justify* a sentence of death. *Based upon this consideration,* the jury ... shall recommend whether the defendant should be sentenced to death ...." 18 U.S.C. § 3593(e) (emphasis added). The plain meaning of

this section is that the jury must not only weigh the aggravating versus mitigating factors but also determine whether the result, no matter how imbalanced the scale might be, is sufficient to justify a sentence of death.

■ When these two sections are read together, it is evident that Congress intended for jury discretion to apply throughout the selection phase [2] of the sentencing hearing, even after deciding whether any mitigating factors exist and after balancing these mitigating factors against the aggravating factors. The meaning of the terms "consideration" in § 3591(a) and "sufficiently outweigh" or "sufficient" in § 3593(e) are key to construing these two sections. Black's Law Dictionary defines "consider" as: "[t]o fix the mind on, with a view to careful examination; to examine; to deliberate about and ponder over." Black's Law Dictionary 277 (5th ed.1979); *see also* Webster's Third New Int'l Dictionary 483 (1986) ("to reflect on; think about with a degree of care or caution."). Applying these definitions of "consider," §§ 3591(a) and 3593(e), when read together, require the jury to 1) weigh or deliberate over the balance of the aggravating versus mitigating factors; and then 2) find whether, based on that weighing process, any imbalance in favor of a death sentence is sufficient to justify the death penalty.[3]

---

**2.** The distinction between the selection phase and the eligibility phase of the sentencing hearing is discussed *infra,* section I(C).

**3.** This construction also provides consistency between the meaning of "consider" in §§ 3591(a) and 3593(e) because, in the context it is being used, "consider" in § 3593(e) can only mean to deliberate/reflect on/weigh. *See* 18 U.S.C. § 3593(e) ("the jury ... shall consider whether all the aggravating factor[s] found to exist sufficiently outweigh all the mitigating factor[s] found to exist to justify a

sentence of death."); *Sorenson v. Sec'y of Treasury,* 475 U.S. 851, 860, 106 S.Ct. 1600, 89 L.Ed.2d 855 (1986) (internal quotation marks omitted) (stating the "normal rule of statutory construction that identical words used in different parts of the same act are intended to have the same meaning."); *see also Estate of Cowart v. Nicklos Drilling Co.,* 505 U.S. 469, 479, 112 S.Ct. 2589, 120 L.Ed.2d 379 (1992) (referring to this rule of statutory interpretation as "the basic canon of statutory construction.").

The specific language of § 3593(e) also supports this construction because the aggravating factors must be "sufficient" to justify a death sentence, even in the absence of any finding of mitigating factors. This makes clear that the jury's role is more than that of a mere accountant, employing an abacus or ledger to record all aggravating factors on one side and all mitigating factors on the other to observe objectively which side has more. To the contrary, each juror is required to evaluate qualitatively whether the aggravating factors proved are sufficient, regardless of their number (or those of the mitigating factors proved), to warrant imposition of the death penalty. *See* Webster's Third New Int'l Dictionary at 2284 (defining sufficient as "to meet one's obligations or satisfy one's needs" or "marked by ... scope, power, or quality to meet with the demands, wants, or needs of a situation or of a proposed use or end."). This same qualitative component is also incorporated into § 3591(a), which requires, in addition to the jury's initial "consideration" of the aggravating/mitigating balance, that the jury subsequently "determine[ ]" whether imposition of a death sentence is "justified."[4] Indeed, the Court infers that Congress elected to use the terms "sufficient" and "justify" rather than applying traditional burdens such as "beyond a reasonable doubt" or "by a preponderance of the evidence" precisely because they wanted to afford juries the opportunity to exercise their discretion not to impose the death penalty regardless of the quantitative weight of the aggravating or mitigating information.[5]

Accordingly, both §§ 3591(a) and 3593(e) anticipate three components wherein jurors may exercise individual discretion: 1) finding the existence of any aggravating and/or mitigating factors; 2) balancing the aggravating versus mitigating factors; and 3) deciding whether any imbalance is sufficient to justify a death sentence. Moreover, these three components comprise the entire selection phase assessment for the jury: once each juror has decided whether any imbalance is sufficient enough to justify a death sentence, they have "determined" whether the death sentence, life without parole, or some other sentence shall be imposed and their job is finished. The jurors therefore are never required to impose the death penalty at any point during the selection phase because they are free to exercise their discretion not to impose the death penalty until the final votes are cast and recorded.[6]

### B. The legislative history of the FDPA

The legislative history of the FDPA buoys the finding that a jury is free

---

4. "Determine" is defined as "to fix conclusively or authoritatively; to settle a question or controversy about; decide by judicial sentence;" "to come to a decision concerning as the result of investigation or reasoning; to settle or decide by choice of alternatives or possibilities." Webster's Third New Int'l Dictionary at 616. Thus, § 3591(a) requires that the jury subsequently "come to a decision concerning" or "decide" whether imposition of a death sentence is "justified."

5. As a result, the statute allows the jury to find the death penalty warranted based on only one aggravating factor despite a finding of ten mitigating factors, or to find the death penalty unwarranted despite a finding of ten aggravating factors and only one mitigating factor.

6. Only after they have "determined" that the death sentence is justified by casting and recording their votes does the "shall be sentenced to death" language of § 3591(a) become operative and imposition of a death sentence become "mandatory." 18 U.S.C. § 3591(a). This language, in effect, prevents the judge from attempting any downward departure of the death sentence.

to exercise its discretion not to impose the death penalty, even after weighing the aggravating and mitigating factors, in deciding whether any imbalance is sufficient to justify a death sentence. In 1993, the Senate introduced two versions of what is now known as § 3593(e), one by Senator Biden and another by Senators Hatch and Dole, as part of Title II of S. 1488, then entitled the "Violent Crime Control and Law Enforcement Act of 1993." Senator Biden's version mirrored § 3593(e) except for the addition of a final sentence stating that "[t]he jury or the court, if there is no jury, regardless of its findings with respect to aggravating and mitigating factors, is never required to impose a death sentence and the jury shall be so instructed." 139 Cong. Rec. S12396 (daily ed., Sep. 23, 1993).

Senators Hatch and Dole offered an alternative version which mandated a death sentence-and eliminated jury discretion-as soon as the jury found that the aggravating factors objectively outweighed any mitigating factors. It stated:

> If, in the case of [an offense for which the death penalty is provided and for which an aggravating factor required to be considered is found to exist], the jury ... shall then consider whether the aggravating factor or factors found to exist ... outweigh any mitigating factor or factors. The jury ... *shall recommend a sentence of death if it unanimously finds at least one aggravating factor and no mitigating factor or if it finds one or more aggravating factors which outweigh any mitigating factors.*

139 Cong. Rec. S.293 (January 21, 1993) (emphasis added). This language was premised upon the mandatory language of the Pennsylvania statute at issue in *Blystone v. Pennsylvania,* which provided that " 'the verdict *must be a sentence of death* if the jury unanimously finds at least one aggravating circumstance ... and no

mitigating circumstance [or] if the jury unanimously finds one or more aggravating circumstances which outweigh any mitigating circumstances.' " *Blystone,* 494 U.S. at 311 & n. 2, 110 S.Ct. 1078 (quoting 42 Pa. Cons.Stat. § 9711(c)(1)(iv) (1988)) (emphasis added). Because of this mandatory death penalty language, jury discretion would end after the initial balancing of aggravating versus mitigating factors, without any option to decide whether the imbalance in favor of the death penalty was "sufficient" to "justify" the death penalty.

The floor debate over which version to adopt reflects that the degree of jury discretion in the competing versions was critical. For example, Senator Hatch criticized the Biden version of the bill because it:

> would make the death penalty extraordinarily difficult to impose due to standardless jury discretion.... Regardless of the aggravating factors that might be present, a jury is not required to impose a death sentence and is explicitly authorized to substitute life imprisonment as an alternative to the death penalty. In all, the Democrat bill's death penalty provisions are so watered down that ... it is almost certain that the penalty will rarely be imposed.

139 Cong. Rec. S14944 (daily ed.) (Nov. 3, 1993). Conversely, Senator Specter stated:

> One of the bills now pending [the Hatch/Dole version] would call for the jury to impose the death sentence where the aggravating factors outweigh the mitigating factors. The bill now before us provides that the jury retains the discretion to decide when to impose life imprisonment or the death penalty. I believe that the provisions of this bill ought to be adopted by the Congress so that it is up to the discretion of the jury as they

see fit on whether the death penalty is to be imposed.

139 Cong. Rec. S15047 (daily ed.) (Nov. 4, 1993). Senator Biden also highlighted that the death penalty procedures in his version "require juries to be informed of their options to sentence the defendant either to death or to life imprisonment without possibility of probation or parole." 139 Cong. Rec. S14919 (daily ed.) (Nov. 3, 1993).

The Senate rejected the Hatch/Dole version and adopted Senator Biden's version, subject to one amendment, Amendment No. 1135, proposed jointly by Senators Biden and Hatch. 139 Cong. Rec. S15286 (daily ed.) (Nov. 8, 1993). The primary function of this amendment was to delete the last sentence of Senator Biden's proposed draft containing explicit jury instructions. *Id.* at S15288. No floor debate or other legislative history exists to disclose the purpose behind this deletion.

In the spring of 1994, the House discussed the death penalty procedures. The House initially considered a version of section 3593(e) identical to the version introduced in the Senate by Senator Biden. The House subsequently adopted an amendment to the proposed 3593(e) language, offered by Rep. Gekas, creating a *Blystone*-styled mandatory death penalty version of 3593(e) similar to the Hatch/Dole approach. The amended language provided:

> If, an aggravating factor required to be considered under section 3592 is found to exist, the jury . . . shall then consider whether the aggravating factor[s] found to exist outweigh any mitigating factors. The jury . . . shall recommend a sentence of death if it unanimously finds at least one aggravating factor and no mitigating factor or if it finds one or more aggravating factors which outweigh any mitigating factors. In any other case, it shall not recommend a sentence of death.

140 Cong. Rec. H2333 (daily ed.) (April 14, 1994). A House–Senate conference committee adopted the amended Senate version of section 3593(e), rejecting the Gekas Amendment language adopted by the House. House Report 103–964. Rep. Gekas expressed dissatisfaction with this result, noting that the Senate version was no different from the earlier House version his amendment had replaced. 140 Cong. Rec. H7940 (daily ed.) (August 11, 1994) (stating that the product of the conference committee "blatantly again went back to the original flawed [Biden] death penalty language, and here we are today, with a death penalty bill that has no teeth in it in this particular version.").

This legislative history reveals that both branches of Congress expressly considered, and ultimately rejected, statutory language which mandates imposition of the death penalty once the jury found that aggravating factors outweigh any mitigating factors. Instead, Congress adopted language allowing juries to exercise discretion to reject imposing a death sentence even if aggravating factors outweighed mitigating factors should this imbalance not be "sufficient" to "justify" a death sentence. While it is true that the Hatch/Biden Amendment removed language stating that "[t]he jury . . . regardless of its findings with respect to aggravating and mitigating factors, is never required to impose a death sentence and the jury shall be so instructed," the legislative history is silent as to why this amendment was offered, let alone adopted. Indeed, while it is possible that the amendment was offered and adopted because Congress did not want juries to receive such an instruction, it is just as likely that the amendment was offered and adopted because the jury instruction language was deemed redundant or an unnecessary encroachment into the domain of federal district courts.

*See United States v. Craft,* 535 U.S. 274, 122 S.Ct. 1414, 1425, 152 L.Ed.2d 437 (2002) ("failed legislative proposals are 'a particularly dangerous ground on which to rest an interpretation of a prior statute.'") (quoting *Pension Benefit Guaranty Corp. v. LTV Corp.,* 496 U.S. 633, 650, 110 S.Ct. 2668, 110 L.Ed.2d 579 (1990)); *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,* 511 U.S. 164, 187, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994) ("Congressional inaction lacks persuasive significance because several equally tenable inferences may be drawn from such inaction, including the inference that the existing legislation already incorporated the offered change."). Therefore, neither the plain meaning of the FDPA nor the legislative history surrounding the adoption of the section 3593(e) preclude the Court from instructing the jury that it is never required to impose a death sentence. *See Craft,* 122 S.Ct. at 1425 (interpreting the statute to include language previously rejected by the Senate in a proposed amendment).

### C. Issuing an Appropriate Jury Instruction in This Case

Under Supreme Court case law, the sentencing portion of a death penalty trial is comprised of two parts: the eligibility phase and the selection phase. *See Buchanan v. Angelone,* 522 U.S. 269, 275, 118 S.Ct. 757, 139 L.Ed.2d 702 (1998); *Tuilaepa v. California,* 512 U.S. 967, 971, 114 S.Ct. 2630, 129 L.Ed.2d 750 (1994). During the eligibility phase, "the jury narrows the class of defendants eligible for the death penalty, often through consideration of aggravating circumstances." *Buchanan,* 522 U.S. at 275, 118 S.Ct. 757. During the selection phase, "the sentencer determines whether a defendant eligible for the death penalty should in fact receive that sentence." *Tuilaepa,* 512 U.S. at 972, 114 S.Ct. 2630. Of particular significance to the issue at bar is the fact that the Su-

preme Court has accorded "differing constitutional treatment" for "those two aspects of capital sentencing." *Buchanan,* 522 U.S. at 275, 118 S.Ct. 757. The eligibility phase caters to the Eighth Amendment requirement of "channeling and limiting the jury's discretion to ensure that the death penalty is a proportionate punishment and therefore not arbitrary or capricious in its imposition." *Id.* at 275–76, 118 S.Ct. 757. The selection phase, however, reflects the Eighth Amendment "need for a broad inquiry into all relevant mitigating evidence to allow an individualized determination." *Id.* at 276, 118 S.Ct. 757 (citations omitted).

During the selection phase, the paramount constitutional concern is "that the sentencer may not be precluded from considering, and may not refuse to consider, any constitutionally relevant mitigating evidence." *Id.* at 276, 118 S.Ct. 757 (citing *Penry v. Lynaugh,* 492 U.S. 302, 317–18, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989); *Eddings v. Oklahoma,* 455 U.S. 104, 113–14, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982); *Lockett v. Ohio,* 438 U.S. 586, 604, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978)). This ensures that the selection phase will produce "an *individualized* determination on the basis of the character of the individual and the circumstances of the crime." *Zant v. Stephens,* 462 U.S. 862, 879, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983) (emphasis in original); *see also Woodson v. North Carolina,* 428 U.S. 280, 303–304, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976) (plurality opinion). The legislature is free to structure how the jury will weigh mitigating versus aggravating evidence so long as this structure does not preclude the jury from giving effect to any relevant mitigating evidence. *Id.* at 276, 118 S.Ct. 757 (citing *Johnson v. Texas,* 509 U.S. 350, 362, 113 S.Ct. 2658, 125 L.Ed.2d 290 (1993); *Penry,* 492 U.S. at 326, 109 S.Ct. 2934; *Franklin v. Lynaugh,*

487 U.S. 164, 181, 108 S.Ct. 2320, 101 L.Ed.2d 155 (1988)).

The Court, however, has made clear that unbridled jury discretion during the selection phase is at least permissible, if not Constitutionally required. *See Tuilaepa,* 512 U.S. at 978–81, 114 S.Ct. 2630 (rejecting a claim that the sentencing scheme violated the defendant's Eighth Amendment rights by allowing the prosecution and defense "to make wide-ranging arguments about whether the defendant deserves the death penalty" because " 'discretion to evaluate and weigh the circumstances relevant to the particular defendant and the crime he committed' is not impermissible in the capital sentencing process.") (quoting *McCleskey v. Kemp,* 481 U.S. 279, 315 n. 37, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987)); *id.* at 974, 114 S.Ct. 2630 ("In providing for individualized sentencing, it must be recognized that [legislatures] may adopt capital sentencing precesses that rely upon the jury, in its sound judgment, to exercise wide discretion."); *Stephens,* 462 U.S. at 875, 103 S.Ct. 2733 (rejecting Respondent's argument that "a scheme that permits the jury to exercise unbridled discretion in determining whether the death penalty should be imposed after it has found that the defendant is a member of the class made eligible for that penalty by statute" violates *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972) because "that argument could not be accepted without overruling our specific holding in *Gregg.*"). Based in part upon these broad pronouncements supporting jury discretion during the selection phase,[7] the Court finds that jury instructions conveying the discretion accorded capital juries during the selection phase is appropriate.[8]

■ In *Jones v. United States,* 527 U.S. 373, 119 S.Ct. 2090, 144 L.Ed.2d 370 (1999), the Supreme Court addressed whether the district court's jury instructions in an FDPA case were proper. Although the specific issue addressed in *Jones* was whether the jury instructions adequately conveyed the law with regard to jury deadlock, in affirming that the jury instructions were not in error, the Court reviewed and ultimately affirmed the use of jury instructions containing the type of discretionary language sought by Defendant in the case *sub judice.* The pertinent portion of the jury instruction affirmed by the Court read as follows:

> After you have completed your findings as to the existence or absence of any mitigating factors, you will then engage in a weighing process. In determining whether a sentence of death is appropriate, you must weigh any aggravating factors that you unanimously find to exist—whether statutory or nonstatuto-

---

7. Other pertinent justifications include, but are not limited to: the complexity of § 3593(e) and the need to ensure that jurors do not jeopardize Defendant's Eighth Amendment rights by according inadequate weight to mitigating factors raised by Defendant; the fact that such a discretionary instruction best fits the two-part § 3593(e) inquiry; the fact that such an instruction best fits the legislative history surrounding the adoption of the § 3593(e) language; and a general abundance of caution given the capital nature of this case. *See generally Graham,* 506 U.S. at 515 n. 9, 113 S.Ct. 892 ("constitutionally relevant mitigating evidence [must] ... be given full consideration and effect.") (citation omitted) (emphasis in original); *Buchanan,* 522 U.S. at 285, 118 S.Ct. 757 (Breyer, J., dissenting) ("The jury will look to the judge, not to counsel, for authoritative direction about what it is to do with the evidence that it hears.") (citing *Taylor v. Kentucky,* 436 U.S. 478, 488–89, 98 S.Ct. 1930, 56 L.Ed.2d 468 (1978)).

8. Contrary to the government's assertion that such an instruction will allow a jury to "ignore" the FDPA's provisions, Gov't. Resp. to Mot. at 4, the Court finds that this instruction will actually help reinforce the proper application of these provisions by the jury.

ry—against any mitigating factors that any of you find to exist. You shall consider whether all the aggravating factors found to exist sufficiently outweigh all the mitigating factor or factors found to exist to justify a sentence of death, or, in the absence of a mitigating factor, whether the aggravating factor or factors alone are sufficient to justify a sentence of death. Based upon this consideration, you the jury, by unanimous vote, shall recommend whether the defendant should be sentenced to death, sentenced to life imprisonment without the possibility of release, or sentenced to some other lesser sentence.

If you unanimously conclude that the aggravating factors found to exist sufficiently outweigh any mitigating factor or factors found to exist, or in the absence of any mitigating factors, the aggravating factors are themselves sufficient to justify a sentence of death, you *may* recommend a sentence of death. *Keep in mind, however, that regardless of your findings with respect to aggravating and mitigating factors, you are never required to recommend a death sentence.*

If you recommend the imposition of a death sentence, the court is required to impose that sentence. If you recommend a sentence of life without the possibility of release, the court is required to impose that sentence. If you recommend that some other lesser sentence be imposed, the court is required to impose a sentence that is authorized by the law.

*United States v. Jones,* 132 F.3d 232, 243–44 (5th Cir.1998), *aff'd, Jones v. United States,* 527 U.S. 373, 119 S.Ct. 2090, 144 L.Ed.2d 370. The Court finds that this instruction is sufficient to convey to the jury the discretion which they may exercise. Accordingly, the Court adopts the instruction affirmed by the Supreme Court in *Jones.*

A number of district courts issuing jury instructions in FDPA cases have employed similar discretionary jury instructions. For example, in *United States v. McVeigh,* No. 96–CR–68–M, 1997 WL 312609 at *43 (D. Col. June 12, 1997), the judge instructed the jury that "[w]hatever findings you make with respect to aggravating and mitigating factors, a jury is never required to impose a death sentence." This type of instruction has also been proffered in *United States v. Len Davis and Paul Hardy,* No. 94–381 (E.D.La.); *United States v. Orlando Hall,* No. 4:94–CR–121–Y (N.D. Tex.); *United States v. Bruce Webster,* No. 4:94–CR–121–Y (N.D.Tex.); *United States v. Anthony Battle,* No. 1:95 CR 528 (N.D. Ga.); *United States v. Bountaem Chanthadara,* 94–10128–01 (D.Kansas); *United States v. Phouc Nguyen,* 94–10128–01 (D.Kansas); *United States v. Lamond Garrett,* No. CR499–133 (S.D.Ga.); *United States v. Willis Haynes,* Crim. No. PJM 98–0520 (D.Md.). None of the instructions offered in these cases has been reversed on appeal.

The government contends that the Eighth Circuit's decisions in *Allen* and *Ortiz* reject Defendant's proposed instruction and should be followed by the Court. Gov't. Resp. at 2. Neither *Allen* nor *Ortiz,* however, require a rejection of the Court's discretionary instruction. In *Allen,* the court stated, "[b]ased upon the plain language of the statute, once a jury makes a final, unanimous determination that a sentence of death is justified, then the FDPA requires its imposition." *Allen,* 247 F.3d at 780–81. In *Ortiz,* the court affirmed that, under the FDPA, "a unanimous finding that death is justified requires a recommendation of a death sentence." *Ortiz,* 315 F.3d at 900–01. Both cases simply stand for the position that once the jury, after 1) weighing the aggravating factors versus mitigating factors; 2) exercising its discretion to find whether this balance is

sufficient to justify a death sentence; 3) makes a determination as to whether death is proper and records this decision in the formal jury verdict, no alteration of the verdict can occur. Indeed, these two opinions offer little more than a tautology: once the jury has made a decision, the jury is no longer entitled to exercise discretion with regard to that decision. Thus, both cases are consistent with the Court's discretionary jury instruction. To the extent that these decisions would actually circumscribe the jury's discretion to determine whether the death penalty is justified, after weighing the aggravating and mitigating factors but before determining the sufficiency of any imbalance to justify a death sentence, the Court respectfully disagrees for the reasons stated above.

## II. *Conclusions*

For the above-stated reasons, Defendant's jury instruction motion is GRANTED. Should this case proceed to the capital sentencing phase, the jury will be provided with the instruction from *Jones* set forth above.