# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-1845EM

_____

Vernon Brown,                           *
                                        *
        Appellant,                    *    On Appeal from the United
                                        *    States District Court
    v.                               *    for the Eastern District
                                        *    of Missouri.
Allen D. Luebbers,                      *
                                        *
        Appellee.                     *

_____

Submitted: January 16, 2003

Filed: September 19, 2003 (corrected 12/16/03)

_____

Before BOWMAN, RICHARD S. ARNOLD, and BYE, Circuit Judges.

_____

RICHARD S. ARNOLD, Circuit Judge.

Vernon Brown appeals from the decision of the District Court denying his 28 U.S.C. § 2254 (2000) petition for a writ of habeas corpus. We affirm in part and reverse in part.

In 1991, a jury convicted Brown of first-degree murder in the 1985 strangulation death of Synetta Ford in St. Louis, Missouri, and he was sentenced to be executed. His motion for state post-conviction relief filed pursuant to Missouri Supreme Court Rule 29.15 was overruled. That decision, as well as Brown's conviction and sentence, were affirmed in a consolidated appeal taken to the Missouri

Supreme Court. <u>State v. Brown</u>, 998 S.W.2d 531 (Mo.) (en banc), <u>cert. denied</u>, 528 U.S. 979 (1999).

In 2000, Brown filed in the District Court a petition for a writ of habeas corpus, raising thirty-one grounds for relief. The District Court denied Brown's petition but granted a certificate of appealability on eleven grounds. Brown has combined the arguments on some of his claims and presents eight issues on appeal.

## I.

First, combining his original habeas grounds 13 and 27, Brown takes issue with the comment in boldface below, made by the prosecutor in his closing statement when he was speaking of conversations Brown had with his wife, Kathy Moore, and with investigators prior to his indictment for Ford's murder:

> Now, is the story that he told Kathy Moore strange and other worldly? Is the story that he told the police strange and other worldly? You bet. This is a strange, strange man. **He's not going to testify**, not going to tell a story like a normal individual. You have heard uncontested testimony from Ms. Kraft in her questioning of Sergeant Roussin that this man not only confessed to the murder of a nine year old child, a little girl named Janet Perkins, but as Ms. Kraft pointed out in questioning Sergeant Roussin, he told the police where to find Janet Perkins' belongings.
>
> The point I'm trying to make is not that his statement about Janet Perkins is necessarily – that his statement about the murder of Janet Perkins is evidence of his guilt in this case, it is not, but it is a strange, strange man, ladies and gentlemen, that would kill a nine year old girl and tell the police where to find that child, that dead child's belongings. I would submit to you, ladies and gentlemen, that both of the strange stories he told to his wife and to the police on videotape are consistent with a very, very strange human being.

-2-

Trial Transcript at 2181–82 (emphasis added). Trial counsel did not object, nor did the trial court act sua sponte to declare a mistrial, as Brown suggests it should have. Moreover, his Rule 29.15 counsel did not properly present a claim that trial counsel was ineffective for failing to object to the prosecutor's remark.

Brown claims that the prosecutor was commenting upon Brown's exercise of his constitutional right not to testify (and not to have it noted in the presence of the jury), that trial counsel was ineffective for failing to object, and that as a consequence, his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments were violated. The State (represented in this case by warden Allen D. Luebbers) contends that these claims are procedurally barred from consideration in a § 2254 proceeding, and the District Court so held. We review de novo. Frasier v. Maschner, 304 F.3d 815, 817 (8th Cir. 2002), cert. denied, 123 S. Ct. 1758 (2003).

A claim raised in a § 2254 petition will not be deemed procedurally defaulted unless the petitioner has been provided a "firmly established and regularly followed state practice" by which to have his federal constitutional claims considered in state court. Ford v. Georgia, 498 U.S. 411, 423-24 (1991) (quoting James v. Kentucky, 466 U.S. 341, 348 (1984). As we understand Brown's position, he is arguing that the state practice is inadequate to foreclose § 2254 consideration of his claim. Because his trial counsel failed to object to the prosecutor's statement as an unconstitutional comment upon his right not to testify, that claim could be considered by the state courts only indirectly, in post-conviction proceedings raising the constitutional ineffectiveness of counsel—that is, objectively deficient performance by counsel and, as a result, actual prejudice that deprived Brown of a fair trial. See Strickland v. Washington, 466 U.S. 668, 687 (1984). Here, as Brown concedes, post-conviction counsel raised the issue of ineffectiveness in the Rule 29.15 proceedings but did not allege the necessary prejudice from trial counsel's failure to lodge an objection to the comment. As a consequence, the Rule 29.15 court held that the claim

was not cognizable in the state post-conviction proceedings. Thus, according to Brown, "there was nothing for the petitioner to appeal concerning it to the state supreme court." Br. of Appellant at 42. By Brown's reckoning, the Rule 29.15 court's holding that his claim was not cognizable is an admission that the state affords him no remedy for his claimed violation of rights.

We disagree not only with Brown's characterization of what took place in the Rule 29.15 proceedings, but also with his reasoning. The Missouri state courts do, in fact, provide procedures by which constitutional questions such as those at issue here can be addressed in the first instance by the state courts. Brown's problem is that he did not avail himself of the procedures that were in place: trial counsel did not object to the comment, and post-conviction counsel did not properly allege trial counsel's ineffectiveness. These are substantive, well-established procedures that Brown was required to follow in order to have his claims considered post-trial and not, as Brown argues, merely "formal 'ritual . . . [that] would further no perceivable state interest.'" Lee v. Kemna, 534 U.S. 362, 366 (2002) (alteration in original) (citations to quoted cases omitted) (holding that a due process claim was not procedurally defaulted where the state argued that the default was the result of trial counsel's failure to follow that portion of a court rule that called for a written motion from a party seeking a trial continuance). If we were to hold that Brown's failure to raise his claim in state court was in reality a failure of the state procedure, it is hard to imagine a situation where a federal court could hold that a claim was procedurally defaulted. Such a holding would therefore foil the intent of Congress to further the interests of federalism and finality in § 2254 cases—an intent demonstrated by the inclusion of statutory provisions for the procedural default of federal constitutional claims when the petitioner fails to allow the state courts the opportunity to consider them in the first instance.

As we have said, Brown admitted in his § 2254 petition that his constitutional claims that derive from the prosecutor's comment were not properly presented to the

Rule 29.15 court and were not raised in his consolidated state-court appeal. In these circumstances, his habeas claims are procedurally defaulted and they will be barred—that is, we will not consider them on federal habeas review—unless Brown can demonstrate cause and prejudice for the default, or unless he can show that the federal habeas court's failure to consider the issues will result in a miscarriage of justice because he is actually innocent. See Sawyer v. Whitley, 505 U.S. 333, 338–39 (1992). As an alternative argument to his contention that there can be no procedural default because there is no state remedy, Brown insists that the cause for his default is his Rule 29.15 counsel's constitutional ineffectiveness in failing to raise the issue. Notwithstanding Brown's argument that it should be otherwise, it is the law of this Circuit that alleged ineffectiveness of state post-conviction counsel cannot supply the required cause to excuse a procedural default. Oxford v. Delo, 59 F.3d 741, 747–48 (8th Cir. 1995), cert. denied, 517 U.S. 1124 (1996); see also Nolan v. Armontrout, 973 F.2d 615, 617 (8th Cir. 1992) (citing Coleman v. Thompson, 501 U. S. 722, 752–54 (1991)). And as we have said many times, one panel of this court may not overrule the holding of another. See, e.g., Burns v. Gammon, 173 F.3d 1089, 1092 (8th Cir. 1999). Further, Brown does not claim that he is actually innocent, so there can be no miscarriage of justice.

In sum, we will not consider the merits of Brown's claims related to the prosecutor's comment, because they are procedurally barred. The District Court's denial of habeas relief on these grounds is affirmed.

II.

The District Court also granted a COA on Brown's ground 11. Brown claims his constitutional rights were violated when the trial court excluded parts of the testimony of social worker Jill Miller during the sentencing phase of the trial.

-5-

Following an offer of proof, during which Miller was examined by Brown's counsel, the trial court indicated that it would sustain the prosecutor's objections to Miller's testimony "that the defendant told her he had a head injury as a child, that he had headaches and that he had been sexually abused as a child when he was five years old." Trial Transcript at 2400–01.[1] Further, during Miller's testimony before the jury, the prosecutor's hearsay objections were sustained when the witness was asked about what Brown had told her regarding various matters, including his health problems, his history of sexual encounters, his relationship with his grandmother, the activities he enjoyed as a child, his experience in prison, the death of friends who were important to him, his alcohol and drug usage, and physical abuse he had sustained. The witness was not precluded from testifying to what she had learned about Brown from others who were not present in the courtroom (indeed, she was never asked about that when testifying before the jury[2]); to what she had learned from reading available school, prison, and medical records; to her impressions of Brown, presumably formed in large part from her conversations with him; and to Brown's description of himself. The questions to which objections were sustained were queries about the content of her conversations with Brown: "Did you discuss with Vernon Brown whether or not . . . ?"; "Did you talk with Vernon regarding . . . ?"; "What did he tell you . . . ?"; "Did you talk to him with regard to . . . ?"; "Did he indicate to you . . . ?" Trial Transcript at 2410–15. We have read the transcript of the proffer and Miller's actual testimony before the jury and conclude that it is not true, as Brown suggests, that Miller was prevented from testifying to her opinion on a topic for which she was qualified as an expert.

---

[1]Miller actually did testify to the headaches, as that information appeared in some of the records she reviewed.

[2]Brown contends that the "state trial judge did what the prosecutor wanted" when the prosecutor objected to testimony "about *anything anyone* had told" Miller. Br. of Appellant at 73. That allegation is unsupported by the record. She simply was not asked while testifying to report what others had told her about Brown.

In Brown's consolidated appeal, the Missouri Supreme Court addressed only the evidentiary issue regarding the trial court's exclusion of Miller's testimony as self-serving hearsay, concluding that the lower court did not abuse its discretion in refusing the testimony. The Supreme Court did not mention the constitutional question raised by Brown. This clearly leaves the federal courts with no state decision to which to apply the § 2254 standards, so we will review de novo the District Court's decision on the merits of the constitutional issue. Further, as with the Turner letter, we do not have jurisdiction to consider Brown's quarrel with the trial court's evidentiary rulings, except to the extent that the exclusion of the testimony is alleged to have violated Brown's federal constitutional rights.

As noted above, Brown must show egregious and prejudicial error as a result of the testimony's exclusion in order to sustain a federal due process claim. We do not believe he has done so. Brown was sitting in the courtroom able to testify to everything that was excluded from Miller's testimony. And some of it came in via other mitigation witnesses. The evidence that was excluded, while arguably mitigating, was not overwhelmingly so—unlike the compelling evidence of aggravating factors. We conclude that any error in excluding the evidence in question was not "gross, conspicuously prejudicial or of such import that the trial was fatally infected." Griffin, 33 F.3d at 904.

The denial of habeas relief on Brown's ground 11 is affirmed.

### III.

For his next point, his habeas ground 8, Brown challenges the state court rulings on his inculpatory statements that were used against him at trial.

Synetta Ford was murdered in March 1985. Police questioned Brown at the scene, and he told them that he had seen Ford arguing with a Cuban man. After being

questioned by police on three subsequent occasions, Brown left town on March 28, 1985, telling his wife, Kathy Moore, that he was tired of the questioning. He instructed Moore to tell police that he had been abducted at gunpoint by three men in a red Pinto. On April 1, Moore told that story to police when they came looking for him; on April 2, she told police that Brown had told her that he had killed Ford. On April 24, 1985, Brown was arrested for Ford's murder and told police the abduction story. Soon after, Moore said she had lied to police about Brown telling her that he had committed the murder, so the charges against Brown were dropped.

On October 27, 1986, Brown was arrested for the murder of nine-year-old Janet Perkins, waived his right to have counsel present during questioning, and confessed. Prosecutors filed a complaint on October 28 charging him with the Perkins murder. Counsel from the public defender's office visited with Brown the next morning, sometime around 8:30 or 9:30, and found him to be indigent. Later that morning, around 11:30, the officers who were investigating Synetta Ford's death visited Brown and read him his rights; Brown agreed to talk with them. During the course of the afternoon, after two additional <u>Miranda</u>[3] readings and two waivers of those rights, Brown made incriminating statements, eventually memorialized on videotape, telling this story: Brown struggled with Ford in her apartment when she came at him with a butcher knife. According to Brown, Ford swung the knife wildly and stabbed herself in the chest. Then she removed the knife and attacked Brown again, at which time he wrapped the cord of an electric curling iron several times around her neck and knotted the cord. As the struggle continued, she stabbed herself again, this time in the throat, and Brown left.

The trial court denied Brown's motion to suppress his statements. Brown raised the issue in his direct appeal to the Missouri Supreme Court, where the point was denied. In his § 2254 petition, he contends that his constitutional rights were

_____

[3]<u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

violated when the court allowed his statements to be used against him because (1) he should not have been questioned about the Ford murder when counsel representing him on the Perkins murder charges was not present and (2) his statement was not voluntary, intelligent, and knowing because he was high on phencyclidine (PCP), and any waiver of his <u>Miranda</u> rights therefore was invalid. The District Court denied relief but granted a COA on these claims.[4]

A.

Brown's claim that his statements about Ford were illegally obtained was first raised when the State used the Ford statements against him in the Perkins trial, after which he was convicted of murder and sentenced to death. <u>State v. Brown</u> (Perkins case), 902 S.W.2d 278, 291–92 (Mo.) (en banc), <u>cert. denied</u>, 516 U.S. 1031 (1995). As to the interrogation in the absence of counsel, the Missouri Supreme Court, in denying Brown's claim in this case, cited its opinion in Brown's appeal in the Perkins case. <u>Brown</u> (Ford case), 998 S.W.2d at 547. In the Perkins consolidated appeal, that court had cited <u>McNeil v. Wisconsin</u>, 501 U.S. 171 (1991), in denying Brown's assertion that the Ford statements were illegally obtained. <u>Brown</u> (Perkins case), 902 S.W.2d at 292.

In <u>McNeil</u>, the defendant was under arrest for armed robbery and was represented at a preliminary appearance by a public defender. Later that day, a detective working a murder investigation met with McNeil and advised him of his rights. McNeil signed a waiver and was questioned but denied being involved in the activities surrounding the murder. But two days later, after again waiving his rights, the defendant admitted involvement, and two days after that, he provided another

---

[4]In his brief, Brown states that "[t]he district court erred in denying, as procedurally barred, the petitioner's Ground 8." Br. of Appellant at 79. That was not the court's basis for denying relief.

incriminating statement. The trial court declined to suppress the statements and the state appellate court affirmed. The United States Supreme Court granted certiorari in the case and affirmed. The Court declared that the Sixth Amendment right to counsel is "offense specific. It cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced, that is, "at or after the initiation of adversary judicial criminal proceedings – whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." McNeil, 501 U.S. at 175 (quotation marks and citations to quoted cases omitted). "Incriminating statements pertaining to other crimes, as to which the Sixth Amendment right has not yet attached, are, of course, admissible at a trial of those offenses." Id. at 176 (citations to quoted cases omitted).

Brown attempts to distinguish McNeil by insisting that the Perkins and Ford cases were treated as "intertwined" by the prosecution "[f]rom beginning to end." Br. of Appellant at 80. He notes that a single indictment in November 1986 charged Brown with both murders, albeit in separate counts, and that evidence from each case was used in Brown's trial in the other. Brown's contention that these connections between the two cases preclude the application of otherwise controlling precedent is of no avail.

Assuming that two discrete crimes could be so related that the teachings of McNeil would not apply, these are not those cases. The two murders were committed at different times, more than a year and a half apart, and with distinctly different victims and apparent motives. A complaint was filed against Brown in the Perkins case on October 28, 1986; it was not until November 18, 1986, almost three weeks *after* the interview in question, that the state initiated adversarial judicial criminal proceedings in the Ford case and Brown's right to counsel for that murder attached. And although the November indictment included both counts, the cases ultimately were severed for trial.

We agree with the District Court's conclusion that the state court's decision was not contrary to clearly established law, as set forth in <u>McNeil</u>, nor did it involve an unreasonable application of that law. Indeed, it is a completely faithful application of clearly established Supreme Court precedent. And to the extent the state court's decision relied on findings of fact, those factual determinations are not unreasonable in light of the evidence that was before the court.

B.

Brown also claims that his inculpatory statements in the Ford case were not voluntary, intelligent, and knowing because he was under the influence of PCP during the interrogation, and so his constitutional rights were violated when the statements were admitted into evidence at his trial.

The public defender initially assigned to meet with Brown after charges were filed in the Perkins case testified at the pretrial hearing that when he interviewed Brown at 8:30 or 9:30 in the morning of October 29, 1986, the same day Brown made the incriminating statements in the Ford case, Brown "appeared to be kind of sleepy or dazed." Trial Transcript at 47 (pretrial motion). Brown told his counsel that he had smoked cigarettes dipped in PCP at some time before his arrest, which was two days earlier, but counsel "didn't know personally if he was" under the influence of alcohol or drugs on the 29th. <u>Id.</u> One of the detectives who talked with Brown around the time of the Ford murder in March 1985 and who participated in the interview on October 29, 1986, said of Brown at the hearing, "I've never seen him in a condition that I thought he was high on drugs or alcohol." <u>Id.</u> at 36. The detective said Brown did not appear tired and was calm when the officers interviewed him.

The Missouri Supreme Court noted that Brown was adequately informed of his <u>Miranda</u> rights: he was told of those rights several times during the interview, he indicated each time that he understood them, and he twice signed a waiver. At the

-11-

end of the last step in the interview (Brown's fifty-five-minute videotaped statement), Brown indicated that he was not under the influence of drugs or alcohol. In any event, the court said, a "defendant's physical and mental condition is not the critical question in determining if defendant's statements were voluntary." Brown (Ford case), 998 S.W.2d at 547. That court was correct. There is no constitutional "right of a criminal defendant to confess to his crime only when totally rational and properly motivated." Colorado v. Connelly, 479 U.S. 157, 166 (1986) (holding suppression was properly denied notwithstanding testimony of a psychiatrist that defendant was schizophrenic and in a psychotic state at least the day before he confessed).[5] Where the allegation of involuntariness relies on the mental condition of the defendant, "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." Id. at 167. Otherwise, the admission of a defendant's statement that was made when a question could be raised about the defendant's mental state is a matter of state evidentiary law. Id.

The District Court concluded that the state court's decision did not reflect an unreasonable application of clearly established federal law or an unreasonable determination of the facts, and that the decision was not contrary to clearly established federal law. We agree. Even assuming that Brown, when questioned about the Ford murder while in custody for the Perkins murder, was impaired by his earlier voluntary use of PCP, it was not an unreasonable application of Connelly to conclude that Brown's constitutional rights were unaffected by the trial court's

[5]The Missouri Supreme Court actually quoted one of its own cases using nearly identical language to that used by the United States Supreme Court in Connelly and cited no United States Supreme Court cases for the proposition. But reasonable application of clearly established federal law "does not require citation of [United States Supreme Court] cases — indeed, it does not even require *awareness* of [such] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, ___ , 123 S. Ct. 362, 365 (2002).

admission of his statement, where there is no evidence of police coercion in the taking of the statement. The state court's application of the relevant law to Brown's claim is not only entirely reasonable, but also correct.

In sum, we affirm the District Court's denial of § 2254 relief on Brown's ground 8.

IV.

Brown maintains that the District Court erred in holding that claims contained within his § 2254 grounds originally numbered 6 and 14 were procedurally barred and also erred in concluding that the state court did not unreasonably apply clearly established federal law when it denied on the merits the one claim within those grounds that had been properly presented to the state court.

The jurors were sequestered during Brown's trial, and a few had their motel rooms burglarized while they were at dinner one weekend night during the trial. Taken were $63.00, some socks, and a bag of snacks. The motel promptly reimbursed the affected jurors for their losses and fired the members of the housekeeping staff who were suspected of the burglaries. The next time court was in session, the trial judge reported the incident to counsel, and a deputy recounted that only one juror "was really upset, visibly upset, she was crying a little bit" when the burglary was discovered. Trial Transcript at 2130. Brown's motion for a mistrial was overruled. Brown contends that the trial judge should have granted a mistrial or, at the least, should have questioned the jurors to determine if they could continue to be fair and impartial to Brown notwithstanding that they were now crime victims. The trial court's failures, Brown claims, resulted in violations of his rights under the Sixth, Eighth, and Fourteenth Amendments. He further contends that trial counsel was ineffective for failing to seek some action by the trial court short of a mistrial, such as questioning the jurors about the incident, suggesting, we suppose, that the court

would have found that one or more jurors could no longer be impartial to Brown and would then have had the appropriate grounds to declare a mistrial.

We agree with the District Court's holding that Brown procedurally defaulted his claim that the trial court violated his constitutional rights when it failed to question the jurors about the burglary and its effect, if any, on their ability to be fair to Brown. He did not raise the issue at trial or in his appeal. Likewise, he did not claim ineffective assistance of counsel on this issue in his Rule 29.15 petition or on appeal from the denial of the motion for post-conviction relief, so this claim is also procedurally defaulted. Brown does not even attempt to describe cause for the defaults. As for prejudice, he states summarily that "there is a reasonable probability that these errors affected the jury's decision of death," but makes no effort to explain why this is so. Br. of Appellant at 93. Further, he makes no claim of actual innocence but merely says a failure to grant relief "would result in an extraordinary miscarriage of justice." Id. Because he cannot show cause and prejudice or actual innocence, the claims are procedurally barred and we will not consider them on the merits in these § 2254 proceedings.

Brown did raise in the Missouri Supreme Court the issue of the trial court's refusal to grant his motion for mistrial. The court denied relief, noting, "There was no apparent indication that the jurors were biased against Brown because other individuals burglarized their hotel rooms." Brown (Ford case), 998 S.W.2d at 549. The court concluded that "no circumstances existed warranting" this "drastic remedy reserved for the most extraordinary circumstances." Id.

Under clearly established federal law, " 'the right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, "indifferent" jurors.' " See Morgan v. Illinois, 504 U.S. 719, 727 (1992) (quoting Irvin v. Dowd, 366 U.S. 717, 722 (1961)). Brown argues that because jurors were described by the deputy as "upset," bias should be presumed. The trial court inquired of the deputy who was

-14-

responsible for shepherding the jurors and was satisfied that the incident did not so affect their ability to be fair to Brown that a mistrial was called for. As we explained above, the Missouri Supreme Court agreed. The District Court held that the state court's decision was not contrary to clearly established federal law, an unreasonable application of the law, or based on an unreasonable determination of the facts. Upon review, we conclude that Brown has not shown otherwise.

We affirm the District Court's denial of § 2254 relief on Brown's claims 6 and 14.

V.

During voir dire, trial counsel for Brown informed the venire members that Brown had been convicted of murder and sentenced to death in the Janet Perkins case.[6] For his habeas point 20, Brown maintains that his trial counsel was constitutionally ineffective for doing so. According to Brown, trial counsel's statements misled the jurors as to their responsibility for sentencing in the Ford case.

In order to prevail on this claim, Brown must be able to demonstrate that counsel's performance was objectively deficient and that Brown thereby was so prejudiced that he did not receive a fair trial. See Strickland, 466 U.S. at 687. The Rule 29.15 court found that trial counsel's decision to bring up the Perkins matter during voir dire "was a matter of trial strategy," an attempt to ensure "that the venire persons would not automatically impose the death penalty when they found out about

---

[6]Brown also mentions in his brief that counsel elicited testimony from a detective that he, the detective, knew Brown had said that he had killed Perkins. Brown did not raise this as a point of ineffectiveness in the state courts, and those courts did not address it. And before this Court, Brown's argument is solely directed to counsel's performance during voir dire and does not speak to the detective's testimony elicited by counsel.

-15-

it." Brown (Ford case), 998 S.W.2d at 550. And they surely would find out about it, since the prosecution intended to argue to the jury in the sentencing phase that Brown's conviction in the murder of Janet Perkins was an aggravating factor in the Ford case. Further, Brown's trial counsel intended to use his Perkins confession during the guilt phase of the trial to discredit his Ford statement. These were not the strategies of a novice public defender. As the Missouri Supreme Court noted, Brown's main trial counsel "was the head of the public defender's capital litigation unit and one of the most experienced attorneys in the unit." Id.

Although the state courts did not mention Strickland, their conclusion that counsel's actions were the product of a valid trial strategy is likewise a conclusion that Brown did not meet the first part of the test for constitutionally ineffective counsel—he did not show that counsel's performance was deficient. The District Court concluded that the state courts' decisions were not contrary to clearly established federal law or based on an unreasonable determination of the facts. We agree and further hold that the decisions did not involve an unreasonable application of Strickland.[7]

---

[7]Brown insists that he "is entitled to relief for the reasons set forth in Caldwell v. Mississippi," 472 U.S. 320, 339 (1985), in which, he says, the Court held that "comments which cause the jury to believe the responsibility for determining the appropriateness of the death penalty lies elsewhere" are constitutionally prohibited. Br. of Appellant at 99. We grant that such comments by counsel, if actually made to a jury, could constitute deficient performance, but that is not Brown's argument—he does not bring up Caldwell in arguing that he has met the first part of the Strickland test. In fact, he does not mention the Strickland test at all, notwithstanding that there is no question that the test represents the clearly established law to apply to an allegation of constitutional ineffectiveness of counsel. In any event, the record does not support the contention that trial counsel's message to the veniremen was that they were not going to bear responsibility for sentencing Brown to death.

The District Court went further and addressed the merits of the prejudice part of the <u>Strickland</u> test, even though the state courts had not, and concluded that Brown had not shown the necessary prejudice. We do not review this holding because it is unnecessary for us to do so, given our deference to the opinion of the Missouri courts on the question of counsel's performance.

The denial of § 2254 relief on Brown's point 20 is affirmed.

VI.

Brown contends that the District Court erred in concluding that his ground 24 was procedurally barred. For that claim, Brown alleges that his constitutional rights were violated when the prosecutor, in reviewing the defense case during his rebuttal argument to the jury, noted that trial counsel "called exactly two witnesses" and further commented on the lack of evidence presented in Brown's defense. Trial Transcript at 2178–79. Because these remarks were followed later in the argument by the "not going to testify" comment discussed in part I of this opinion, Brown maintains that the prosecutor's argument was an attempt to shift the burden of proof from the State to Brown.

In his consolidated appeal, Brown raised only the issue regarding the prosecutor's statements about the witnesses he called, contending that this alone shifted the burden of proof. The Missouri Supreme Court rejected his claim, holding that the remarks in question had no such effect. His argument now is that the comment about his witnesses and the remark about his not testifying worked in combination to violate his constitutional rights. But as we have said, he did not raise a challenge in the state courts to the prosecutor's statement that "[h]e's not going to testify." The District Court held that Brown's claim therefore was procedurally defaulted and that because Brown had not shown cause and prejudice to excuse the default, the claim is procedurally barred from consideration by the federal habeas

-17-

court. In his brief to this Court, Brown steadfastly ignores the basis for the District Court's denial of his point and fails to make any argument as to cause and prejudice, presumably relying on the argument that we rejected in part I of this opinion. After de novo review, we hold that the District Court did not err in concluding that this claim is procedurally barred.

## VII.

For his habeas ground 25, Brown alleges that the trial court erred in the sentencing phase of the trial, and that his constitutional rights were violated when that court refused his proposed instructions on mitigation. These instructions included a list of fifteen nonstatutory mitigating factors.

Brown's first argument is that Missouri law at the time, by statute, required that the proposed instructions be given. In Brown's consolidated appeal, the Missouri Supreme Court noted that even before the statute in question was amended (in 1993, but after Brown's trial) to prohibit a jury from being instructed on specific nonstatutory mitigating factors, the court itself "required the trial courts not to list nonstatutory mitigating circumstances in the instruction." Brown (Ford case), 998 S.W.2d at 551. The court reasoned that a list might be interpreted by jurors as inclusive, preventing them from considering other evidence they might deem mitigating. The state court then rejected Brown's argument, and Brown now alleges that this was error. Once again, Brown is arguing that the Missouri courts misinterpreted the State's own laws; this issue is not within our jurisdiction.

Brown further asserts that the trial court's failure to give his proposed instructions on mitigating evidence deprived him of a constitutional liberty interest. The District Court concluded that this claim was procedurally defaulted, and there was no showing of cause and prejudice or actual prejudice to overcome the default, so the claim was barred. Brown does not argue otherwise on appeal. But he also

-18-

generally invokes the Sixth, Eighth, and Fourteenth Amendments in stating his claim: that his rights were violated when the trial court refused his instructions on mitigation but gave instructions listing the statutory and nonstatutory aggravating circumstances that the prosecution maintained it had proved. The Missouri Supreme Court did not adjudicate the merits of the constitutional claim, dealing only with the issue of state law, so there is no state court decision to which we must defer. The District Court did address the claim on the merits; we review that decision de novo.

The District Court relied on Buchanan v. Angelone, 522 U.S. 269 (1998), in holding that Brown's constitutional rights were not violated when the trial court rejected his instructions on mitigating evidence. In Buchanan, the trial judge gave an instruction on a statutory aggravating factor and declined to give the capital defendant's proposed instructions on statutory and general nonstatutory mitigating circumstances. The jury recommended a sentence of death. The United States Supreme Court distinguished between the "eligibility" phase and the "selection" phase of a capital sentencing proceeding. "In the eligibility phase, the jury narrows the class of defendants eligible for the death penalty, often through consideration of aggravating circumstances." Id. at 275. The jury's discretion at this stage must be limited "to ensure that the death penalty is a proportionate punishment and therefore not arbitrary or capricious in its imposition." Id. at 275-76. In the next phase, where mitigating circumstances have relevance, the jury decides whether the eligible defendant should receive a death sentence. In this "selection" phase, "the sentencer may not be precluded from considering, and may not refuse to consider, any constitutionally relevant mitigating evidence." Id. at 276. But the Court, noting that its previous "decisions suggest that complete jury discretion is constitutionally permissible" during the selection phase, held that the trial court's refusal to instruct the jury "on the concept of mitigation and . . . on particular statutorily defined mitigating factors did not violate the Eighth and Fourteenth Amendments to the United States Constitution." Id. at 276, 279.

The instructions given in Brown's case clearly directed the jury to consider mitigating circumstances and to weigh them against any aggravating circumstances when determining whether the death penalty was appropriate in Brown's case. In fact, the jury was instructed that it could impose a life sentence even if mitigating factors did not outweigh aggravating factors. Indeed, the mitigation instructions given to Brown's jury were far more explicit than the one given in Buchanan, which simply gave the jury the authority to sentence the defendant to life imprisonment instead of death if it "believe[d] from all the evidence that the death penalty [was] not justified." Id. at 272 n.1 (quoting the jury instructions). The absence from the instructions of Brown's list of nonstatutory mitigating factors in no way precluded the jury from considering the mitigation evidence; indeed, the instructions mandated that it do so.

Brown says that Buchanan is distinguishable because only statutory factors were at issue in that case, not nonstatutory factors as in this case. But he does not explain why this makes Buchanan inapplicable here, and we can discern no reason that it should. Accordingly, we affirm the District Court's decision denying habeas relief on Brown's point 25.

VIII.

We have said enough, so far, to reject all of the contentions that would invalidate Brown's conviction. We have also rejected all but one of his arguments concerning the penalty phase. It remains to discuss the remaining point, which in our opinion has merit. We think the trial court violated petitioner's rights under the Eighth Amendment and under the Due Process Clause of the Fourteenth Amendment by excluding a letter written by Mr. Brown's brother, Darius Q. Turner, who was on active duty in the United States Army serving in the Middle East as part of Operation Desert Shield. Petitioner wished to present the letter to the jury as mitigation evidence. The letter cast petitioner in a much more positive light than did the State of Missouri's account of him. Among other things, the letter indicated that, as a

child, petitioner had been very protective of his little brother and his friends. The letter also indicated that petitioner continued to mean a great deal to his brother — in fact, that petitioner meant more to his brother than did other family members. This letter had the potential to sway the jury because it cast petitioner in such a positive light and showed the continuing positive impact that his life could have if preserved. The trial court excluded the letter on the ground that it was hearsay.

Petitioner alleges that the exclusion of the letter violated his constitutional rights under the Eighth and Fourteenth Amendments. This question should be decided under pre-AEDPA standards. In considering this claim, the Missouri Supreme Court primarily addressed the question of state-evidentiary law, only noting at the very end of its discussion that the letter's "exclusion does not in the context of this case seem prejudicial." Brown, 998 S.W.2d at 550. It seems, then, that the federal constitutional question was not fully "adjudicated on the merits in state court proceedings." 28 U.S.C. §2254(d). In these circumstances, it seems appropriate that we not apply the standards of §2254 as amended by AEDPA, because there is no apparent state-court adjudication to which to apply them. See Robinson v. Crist, 278 F.3d 862, 865 (8th Cir. 2002) ("because this claim apparently was not adjudicated by the [state] court, we likely should apply the pre-AEDPA standard of review."). Indeed, the District Court considered the constitutional question on the merits.

We understand Mr. Brown's claim as relying upon both the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment. In Lockett v. Ohio and later cases, the Supreme Court established that the Eighth Amendment guarantees a capital defendant the right to introduce all relevant mitigating evidence in the penalty phase. Thus, the Court noted that "the Eighth and Fourteenth Amendments require that the sentencer, in all but the rarest kind of capital case, not be precluded from considering, *as a mitigating factor*, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." Lockett, 438 U.S. 586, 604 (1978) (plurality opinion)

(emphasis in original); see also Eddings v. Oklahoma, 455 U.S. 104, 110 (1982). The Supreme Court has also held that the Due Process Clause requires that a state's rules of evidence not be applied mechanically when doing so would preclude the defendant from introducing highly relevant evidence at the penalty phase. Thus, the exclusion of hearsay testimony at the penalty phase of a death-penalty case violates the Due Process Clause of the Fourteenth Amendment where "[t]he excluded testimony was highly relevant to a critical issue in the punishment phase of the trial, and substantial reasons existed to assume its reliability." Green v. Georgia, 442 U.S. 95, 97 (1979) (citations omitted) (per curiam).

In Mr. Brown's case there was no reason to doubt the reliability of the letter from his brother. The letter's return address was to "SFC Darius Q. Turner, HLM 801st MAINT BN, 101st ABN DIV (AASLT), APO NY 09309." The letter's postmark indicates that it was sent from the United States Army. Indeed, the trial judge did not doubt the letter's authenticity: "I have no problem with the authenticity of it except that it's just not admissible even if this was an affidavit." Tr. 2443. Because "substantial reasons existed to assume [the letter's] reliability," Green, 442 U.S. at 97, due process required its admission if it was highly relevant to a critical issue. In our estimation, the letter was highly relevant, as it cast Mr. Brown in a positive light and attested to his continued importance to his brother, who was an active-duty Army sergeant. Was exclusion of the letter sufficiently prejudicial to warrant vacation of Mr. Brown's sentence? We think the answer is yes. Mr. Brown's claim relies upon both the generalized or undifferentiated Due Process Clause and the Eighth Amendment. Both the Supreme Court and this Court have held that a Lockett claim is reversible error unless the error can be said to be "harmless." See, e.g., Hitchcock v. Dugger, 481 U.S. 393, 399 (1987); Skipper v. South Carolina, 476 U.S. 1, 7-8 (1986); Sweet v. Delo, 125 F.3d 1144, 1158 (8th Cir. 1997).

The exclusion of Mr. Turner's letter was not harmless. The critical issue in the penalty phase of Mr. Brown's trial was his character. The evidence presented by the

State of Missouri was aimed at convincing the jury that petitioner was a bad person. Petitioner's attorneys, on the other hand, attempted to prove that although he had committed bad acts, he was a man whose life was worth saving. Mr. Turner's letter seems highly relevant in itself, and it would have been even more compelling than the other mitigation evidence because of its source — a member of the armed services on active duty in time of war. Mr. Turner's status as a soldier would have been especially forceful in this case because the trial judge had repeatedly lauded the soldiers serving in the Middle East. The judge had at various times said all of the following to the jury:

> There is nothing more important than . . . what our fellows and ladies are doing over in the Gulf right now, fighting for this country.

* * *

> I suppose that there is only one type of service that a citizen can render to his government or to society above jury duty is that which is now being enacted in the Gulf area, war, that's the highest duty that a citizen owes to his country.

* * *

> It's a vital service that you perform. Only one transcends it, only one is greater than that and that's what's happening over there in the Gulf. Serving your country in times of conflict and things of that nature is the only service a citizen can perform that is greater than serving on jury duty.

* * *

> When you stop to consider that we have a lot of men in the Gulf area that I suppose if they had their druthers they would rather not be there and the sacrifices they're making, ours pales very, very badly in comparison.

-23-

* * *

> Ladies and gentlemen of the jury, I know we will all keep our troops in the Persian Gulf in mind when we say our prayers.

Tr. at 875, 996, 1144, 1632, and 1642. These tributes would have made the plea for mercy from Mr. Brown's brother resonate forcefully with the jury. If there is any doubt that the exclusion of the letter would have prejudiced Mr. Brown in a normal case, the trial judge's repeated references to the importance of the service of the troops remove that doubt from our minds. We hold that the exclusion of Mr. Turner's letter violated Mr. Brown's rights under the Eighth and Fourteenth Amendments and that the exclusion was not harmless.

Having concluded that petitioner's murder trial was fatally flawed in the penalty phase, we reverse the order of the District Court and grant the writ of habeas corpus, requiring the State to reduce the penalty to life in prison, or to retry the issue of life or death. We leave the conviction undisturbed.

It is so ordered.

BOWMAN, Circuit Judge, dissenting.

I concur in the judgment of the Court insofar as it affirms the District Court's rejection of Brown's various claims for habeas relief. I respectfully dissent from that part of the judgment reversing the District Court on Brown's ground 12 and remanding for resentencing.

I agree with the Court that AEDPA deference to the state-court decision is not appropriate here, as the state court did not address the merits of the constitutional question. On the other hand, "it is not the province of a federal habeas court to

-24-

reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67–68 (1991). To the extent Brown's argument attacks the Missouri courts' application of its own rules of evidence, it is not cognizable in federal habeas. See 28 U.S.C. § 2253(c)(2) (2000) ("A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."). The only issue properly before the federal habeas courts is Brown's claim that his Sixth, Eighth, and Fourteenth Amendment rights under the Constitution were violated by the exclusion of the letter from his brother, Sergeant Darius Turner, as evidence in mitigation at the sentencing phase of the trial.[8]

Initially, I note that the Court places what I consider to be undue emphasis on the trial judge's comments to the jury regarding the then-ongoing Gulf War and the contemporaneous service of U.S. troops in that war. As later revealed by the letter in question, Turner was stationed in Saudi Arabia during the Gulf War. It appears that the Court is suggesting that the jury would have found mitigating circumstances in Turner's service to his country in the Gulf War, i.e., in deeds of Turner that have no relevance to Brown, his crime, his character, or his relationship with Turner. That is not proper mitigation evidence.

The trial court's evidentiary ruling regarding the Turner letter could be a violation of Brown's due-process rights, such that the writ must issue, only if it

---

[8]Throughout Brown's brief, counsel is wont to allege violations of all manner of constitutional amendments, usually the Sixth, Eighth, and Fourteenth—often invoking "due process" and "equal protection" for good measure—regardless of their applicability to the issue raised. Preparing briefs for § 2254 review of capital cases is often complex, and counsel's continuing representation of habeas petitioners facing execution is of great assistance to the Court. I would suggest, however, that more focused arguments, identifying with specificity the constitutional issues in play, would better serve his clients. Further, I believe that counsel's disparaging rhetoric directed at the state courts, at Brown's previous counsel, and at counsel for the State goes beyond the proper bounds of zealous advocacy.

resulted in error that was "gross, conspicuously prejudicial or of such import that the trial was fatally infected." Griffin v. Delo, 33 F.3d 895, 904 (8th Cir. 1994) (quoting Rhodes v. Foster, 682 F.2d 711, 714 (8th Cir. 1982)), cert. denied, 514 U.S. 1119 (1995). I conclude that Brown has not made the case for the necessary prejudice. While "substantial reasons existed to assume [the letter's] reliability," I do not think "[t]he excluded evidence was highly relevant to a critical issue in the punishment phase of the trial." Green v. Georgia, 442 U.S. 95, 97 (1979) (per curiam). That is to say, having studied the record in this case, I must conclude that Brown cannot show that the letter, had it been admitted into evidence, would have changed the jury's decision to impose the death penalty. There was, in fact, other mitigating character evidence before the jury, and, even more relevant here, there was devastating evidence of aggravating circumstances. Even if "harmless error" be the governing standard, the exclusion of the Turner letter was harmless beyond a reasonable doubt.

The jury was instructed on four aggravating circumstances, two statutory and two nonstatutory. The first factor that the jury considered was whether Brown was convicted in 1973 in Indiana on a charge of assault and battery with intent to gratify sexual desires. In fact, the indictment on the charge, read into evidence during the sentencing portion of Brown's trial, accused Brown of fondling and caressing the body of a twelve-year old girl to gratify his own sexual desires. Trial Transcript at 2298. Brown pleaded guilty to the charge.

Next, the jury was instructed to consider whether Brown's murder of Synetta Ford "involved torture and depravity of mind and whether, as a result thereof, the murder was outrageously and wantonly vile, horrible, and inhuman." State v. Brown, Cause No. 861-03056, Legal File Components of the Record on Appeal at 86 (Mo. S. Ct.). The jury could find depravity of mind only if it found that Brown "committed repeated and excessive acts of physical abuse upon Synetta Ford and the killing was therefore unreasonably brutal." Id. The evidence before the jury was that nineteen-year-old Synetta Ford was found dead in her basement apartment with a knife sticking

out of her throat and the electrical cord from a curling iron "tightly knotted around the neck." Trial Transcript at 2043, see also id. 1662, 1684. The door to her apartment had been forced open. The evidence showed that Brown first strangled her, taking the time to knot the electrical cord around her neck, and then as she was dying he stabbed her in the chest and neck. The stab wound to her neck severed her carotid artery, the major artery in the neck. The jurors saw photographs of Ford's body taken as it appeared when it was discovered on the floor of her apartment and also an autopsy photograph. In addition, the jury watched a videotape of Brown's confession, where he claimed that Ford had accidentally stabbed herself before and after he strangled her with the cord.

The jury was further charged with deciding whether Brown was convicted of first degree murder in 1988. During sentencing, jurors heard evidence that in October 1986 Brown took nine-year-old Janet Perkins, who was at his home playing with his stepsons, into the basement where he wrapped a cord around her neck and strangled her. The boys heard her screaming as they played upstairs. The body was found near a trash dumpster, wrapped in trash bags, with a rusty coat hanger wrapped around her ankles and one of her arms, so that her knees were drawn up to her body. After Brown was picked up in connection with the Perkins murder, and confessed his guilt, he led officers to another dumpster a block from where the body was found. There they found a bag containing Janet Perkins's missing shoe, a yellow plastic raincoat, and some of her school papers. The Ford jury also saw photographs of the little girl's body and watched Brown's videotaped confession to the Perkins murder. Brown was convicted of first degree murder in the Perkins case and sentenced to death.

Finally, the jury was instructed to decide whether Brown committed acts of sodomy on his stepsons Christopher Moore, Jason Moore, and Tommy Johnson, who were about seven, five, and nine years old, respectively, at the time of the abuse to which they testified. Christopher, age eleven at the time of the sentencing, testified that before Brown was arrested for the Perkins murder in October 1986, he would

take Christopher alone into the bedroom Brown shared with Christopher's mother and tell him to undress and lie on his stomach on the bed. Brown would undress, put "hair grease" on his penis, and put his penis in Christopher's anus and then in his mouth. <u>Id.</u> at 2262. Brown committed these acts of sodomy on several different occasions. Christopher told no one about the incidents until Brown was in jail because Brown had said that if he told, he "would never see any of [his] brothers or [his] mother again." <u>Id.</u> at 2264. Jason, nine years old when he testified, also explained to the jury how Brown had performed anal sex on him and said that Brown had threatened to "kill us" if he told anyone. <u>Id.</u> at 2288. Thirteen-year-old Tommy Johnson testified that Brown put his penis in Tommy's anus and mouth and that Brown also put his mouth on Tommy's penis. <u>Id.</u> at 2323. The boys said that Brown would commit the acts of sodomy when their mother was not at home, taking them one at a time from playing with their brothers and locking the door so that the boys who were not being victimized at the time could not come in.

The jury found all four aggravating circumstances, unanimously, beyond a reasonable doubt.

In light of this damning evidence, I cannot see how a letter expressing brotherly affection rooted in a childhood memory would have changed the jury's decision to impose the death penalty upon Brown. I would affirm the judgment of the District Court denying the writ on all claims.

_____