MCKEE, Chief Judge,
concurring in part, and dissenting in part
I agree with the majority’s conclusion that Copenhefer’s challenge to his conviction is without merit. However, for the reasons that follow, I cannot agree that the District Court erred in overturning the death sentence that was imposed.
I.
It has long been held that the Eighth Amendment bars the arbitrary imposition of the death penalty. Beard v. Banks, 542 U.S. 406, 421, 124 S.Ct. 2504, 159 L.Ed.2d 494 (2004). Because “death is different,” Ford v. Wainwright, 477 U.S. 399, 411, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986) (plurality opinion), the United States Supreme Court “has gone to extraordinary measures to ensure that the prisoner sentenced to be executed is afforded process that will guarantee, as much as humanly possible, that the sentence was not imposed out of whim, passion, prejudice, or mistake.” Eddings v. Oklahoma, 455 U.S. 104, 118, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982) (O’Connor, J„ concurring) (emphasis added). Indeed, there is “a considerable history reflecting the law’s effort to develop a system of capital punishment at once consistent and principled but also humane and sensible to the uniqueness of the individual. Since the early days of the common law, the legal system has struggled to accommodate these twin objectives.” Id. at 110, 102 S.Ct. 869.
‘ Eighth Amendment jurisprudence therefore requires that the sentencer (as opposed to an appellate court) be permitted to consider any aspect of the defendant’s record or character as a mitigating factor, and weigh it against any aggravating factors in determining whether the defendant should be put to death by the state. Id. at 117-18, 102 S.Ct. 869 (O’Connor, J„ concurring). The “[sjentencer [must] be given a full opportunity to consider mitigating circumstances in capital cases.” Lockett v. Ohio, 438 U.S. 586, 602, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). “Equally clear is the corollary rule that the sentencer may not refuse to consider or be precluded, from considering ‘any relevant mitigating evidence.’” Skipper v. South Carolina, 476 U.S. 1, 4, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986) (quoting Eddings, 455 U.S. at 114, 102 S.Ct. 869).
The reason is clear. “Rather than creating the risk of an unguided emotional response, full consideration of evidence that mitigates against the death penalty is essential if the jury is to give a reasoned moral response to the defendant’s baek: ground, character, and crime.” Penry v. Lynaugh, 492 U.S. 302, 319, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989) abrogated on other grounds by Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002) (internal quotations omitted); see also Eddings, 455 U.S. at 112, 102 S.Ct. 869 (“the fundamental respect for humanity underlying the Eighth Amendment requires consideration of the character and record of the individual offender and the circumstances of the particular offense as a constitutionally indispensible part of the process of inflicting the penalty of death.”). But mere “consideration” of mitigating evidence is .insufficient to satisfy Eighth Amendment safeguards. The jury must *394 also be able to “give effect to that evidence of mitigation.” Penry, 492 U.S. at 319, 109 S.Ct. 2934.
My colleagues quite correctly emphasize this point in discussing Penry and Eddings “to show how distinguishable they are on the facts from the case at hand.” See Maj. Op. at 386. (“[t]he sentencer must be able to consider and [be able to] give effect to that evidence in imposing sentence.”) (emphasis added). The majority’s conclusion that those cases, along with Buchanan v. Angelone, amount to “game, set, and match” would be quite difficult to refute if Copenhefer’s sole argument was that the trial court erred by failing to instruct the jury on the legal effect of the stipulation that he had no prior record. Maj. Op. at 387-88; 522 U.S. 269, 272-73, 118 S.Ct. 757, 139 L.Ed.2d 702 (1998).
Copenhefer’s argument, however, is not that narrow. Accordingly, we cannot so readily declare that Buchanan ends our inquiry. Copenhefer argues not only that the court’s failure to define “stipulation” or inform the jury of its significance unconstitutionally precluded the jury from giving effect to evidence of mitigation, but also that the jury’s failure to engage in the requisite balancing of mitigating and aggravating factors (because the jury found that no mitigating factors existed) resulted in the arbitrary imposition of the death penalty in violation of the Eighth Amendment. See Initial Brief at 14 (“Moreover, the jury’s failure to find and weigh the stipulated mitigating fact rendered the death sentence arbitrary and capricious.”). This latter point is the issue upon' which this case primarily turns and, given the record here, it is a point that undermines the majority’s reliance on Buchanan. On the contrary, under the bizarre circumstances of Copenhefer’s penalty hearing, Penry and Eddings require that we affirm the District Court’s order vacating the sentence of death, and Buchanan is not to the contrary.
n.
As the majority explains in summarizing the underlying facts of this case, the prosecutor entered into a stipulation with defense counsel which established that Copenhefer had no prior criminal history. The court told the jury that the stipulation existed. Thus, not surprisingly, defense counsel quite naturally made the following argument during his summation at the close of the penalty phase of the trial:
Now, with regards to the one mitigating circumstance, which we’ve already referred to, the fact that he has no prior convictions, [the prosecutor] stood up and stipulated to that, and I suggest to you that speaks for itself. In other words, we have established that clearly that mitigating circumstance exists. And that, therefore, you should take that directly into consideration in making your determinations.
App., p. 4471; see also Maj. Op. at 382.
However, for reasons known only to him, the prosecutor thought it appropriate to ignore that he had stipulated that a migrating factor existed. After defense counsel’s closing, the prosecutor argued to the jury: “[Copenhefer] chose to do it on his own, in a conscious and deliberate and a calculated fashion, and that’s why I submit there are no true mitigating circumstances of merit in this particular case.” App., p. 4489 (emphasis added).
No doubt sensing the problems that could arise from the prosecutor’s remarks, the “trial court discussed [with counsel] whether it should ... direct the jury to find as a matter of law that the stipulated fact Copenhefer had no prior record was a *395 mitigating factor.”[1] See Maj. Op. at 382. Not surprisingly, given the prosecutor’s decision to ignore the stipulation and argue that no mitigating circumstance “of merit” existed, defense counsel asked the trial court to instruct the jurors that at least one mitigating factor had been proven as a matter of law. For reasons that are beyond my comprehension, the trial court refused. Instead, it gave the standard charge which is quoted by the Majority. Although my colleagues include the court’s charge at some length in their opinion, I will reiterate portions of it in order to emphasize why the majority’s analysis reaches the wrong conclusion.[2]
As the Majority points out, the trial judge instructed the jury that it was permitted to consider all mitigating circumstances. However, that was qualified by the instruction that Copenhefer “must prove any mitigating circumstances [sic] only by a preponderance of the evidence; that is, by the greater weight of the evidence.” App., p. 004506 (emphasis added). At another point during the charge, the trial court instructed the jury:
In this case, under the Sentencing Code, the following matters, if proven to your satisfaction by a preponderance of the evidence, can be mitigating circumstances: First, the defendant has no significant history of prior criminal convictions; and, second, any other evidence of mitigation concerning the character and record of the defendant and the circumstances of the offense.
App., p. 004507 (emphasis added).
The trial judge informed the jury a second time that “the defendant need only prove any mitigating circumstances by a preponderance of the evidenceId. at 004509 (emphasis added). The trial court also reiterated that the jury “may not refuse to consider any evidence in mitigation which has been proven to your satisfaction by a preponderance of the evidence.” Id. (emphasis added). Finally, the trial court told the jury to “consider the mitigating circumstances offered by the defendant. [But the trial court clarified], [t]his. does not mean that you must accept them as mitigating circumstances, for you shall only do that if one or more of you determines that those mitigating circumstances have been proven by a preponderance of the evidenceId. (emphasis added).[3]
*396 Placed against this background and considered in the context required by this record, Buchanan, Penry and Eddings mandate that we uphold the District Court’s thoughtful opinion and affirm its order vacating Copenhefer’s sentence. In Buchanan, the Supreme Court held that the trial court’s failure to specifically inform the jury of certain statutorily prescribed mitigating circumstances did not invalidate the defendant’s death sentence. As my colleagues explain, the Court held that no constitutional rule required the court “to ‘instruct the jury on its obligation and authority to consider mitigating evidence, and on particular mitigating factors deemed relevant by the State.’ ” See Maj. Op. at 385 (quoting Buchanan, 522 U.S. at 275, 118 S.Ct. 757). However, nothing in the Court’s opinion suggests that the jury ignored evidence of a mitigating factor or that the Supreme Court would have upheld the results of a penalty hearing that allowed jurors to arbitrarily ignore mitigation that had been established as a matter of law. On the contrary, the Court explicitly declared “that the sentencer may not be precluded from considering, and may not refuse to consider, any constitutionally relevant mitigating evidence.” Buchanan, 522 U.S. at 276, 118 S.Ct. 757 (emphasis added). The Court rejected the defendant’s challenge to the jury charge in Buchanan precisely because the “jury instruction did not foreclose the jury’s consideration of any mitigating evidence” 522 U.S. at 277, 118 S.Ct. 757, but it is clear from the language I have just quoted that nothing on the record in Buchanan suggested that the jury simply refused to consider evidence of mitigation.
I do not suggest that the jury here, in Buchanan or in any other case should attribute any particular weight to a mitigating fact that is proven. However, it is clear that the Eighth Amendment does not tolerate a sentencing phase of a capital trial where jurors plainly ignore mitigating evidence. As both the Court in Penry and majority in this case explain, “Eddings makes clear that it is not enough simply to allow the defendant to present mitigating evidence to the sentencer. The sentencer must also be able to consider and give effect to that evidence in imposing [its] sentence.” Maj. Op. at 386 (quoting Penry, 492 U.S. at 319, 109 S.Ct. 2934).
More specifically, in Penry, the United States Supreme Court granted certiorari to resolve two questions. The question relevant to our inquiry was whether Penry:
was sentenced to death in violation of the Eighth Amendment because the jury was not adequately instructed to take into consideration all of his mitigating evidence and because the terms in the Texas special issues were not defined in such a way that the jury could consider and give effect to his mitigating evidence in answering them.
492 U.S. at 313, 109 S.Ct. 2934. The Court found that the jury had been unable to give mitigating effect to evidence in imposing the sentence partly because the jury instructions failed to define “ ‘deliberately’ in a way that would clearly direct the jury to consider fully Penry’s mitigating evidence as it bears on his personal culpability.” Id. at 323, 109 S.Ct. 2934. The Court held that a reasonable juror may have thought Penry acted “deliberately” because he confessed. Id. at 322, 109 S.Ct. 2934. But the Court noted that
personal culpability is not solely a function of a defendant’s capacity to act ‘deliberately.’ ... Because Penry was men *397 tally retarded, ... and thus less able than a normal adult to control his impulses or evaluate the consequences of his conduct, and because of his history of childhood abuse, that same juror could also conclude that Penry was less morally ‘culpable than defendants who have no such excuse,’ but who acted ‘deliberately’ as that term is commonly understood.
Id. at 322-3, 109 S.Ct. 2934 (quoting California v. Brown, 479 U.S. 538, 545, 107 S.Ct. 837, 93 L.Ed.2d 934 (1987) (O’Con-nor, J., concurring)).
For our purposes, it is important to note that the Court specifically stated that:
it is not enough simply to allow the defendant to present mitigating evidence to the sentencer. The sentencer must also be able to consider and give effect to that in imposing sentence. Only then can we can be sure that the sentencer has treated the defendant as a ‘uniquely individual human bein[g]’ and has made a reliable determination that death is the appropriate sentence.
Id. at 319, 107 S.Ct. 837 (quoting Woodson v. North Carolina, 428 U.S. 280, 304-5, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976)). The Court concluded: “[i]n the absence of jury instructions defining ‘deliberately in a way that would clearly direct the jury to consider fully Penry’s mitigating evidence as it bears on his personal culpability, we cannot be sure that the jury was able to give effect to the mitigating evidence....”. Id. at 323, 96 S.Ct. 2978.
Thus, Penry recognizes that there are situations where the mere mention of “mitigating evidence” in a jury charge, or admitting evidence of mitigation, may not, by itself, be sufficient to guard against the arbitrary imposition of the death penalty. This is such a case.
“Presentation of mitigating evidence alone, of course, does not guarantee that a jury will feel entitled to consider that evidence.” Boyde v. California, 494 U.S. 370, 384, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990). As the Court explained in Penry: “the right to have the sentencer consider and weigh relevant mitigating evidence would be meaningless unless the sentencer was also permitted to give effect to its consideration’ in imposing [its] sentence.” Penry, 492 U.S. at 321, 109 S.Ct. 2934 (quoting Franklin v. Lynaugh, 487 U.S. 164, 185, 199, 108 S.Ct. 2320, 101 L.Ed.2d 155 (1988)).
III.
My colleagues focus on the trial court’s repetition of the role that evidence of mitigation can play at the penalty phase of a capital trial. The Majority appears to rely on the portions of the trial court’s instructions that told the jurors: (i) the jury “may consider as mitigating circumstances any circumstance [sic] which tends to justify the penalty of life imprisonment,” Maj. Op. at 383; (ii) the “list of mitigating circumstances offered cannot limit your deliberations, since you are free to consider any aspect of the crime or of the character of the defendant as mitigating in your sole discretion,” id. at 383; (iii) the jury may consider “any other evidence of mitigation concerning the character and record of the defendant and the circumstances of the offense.” Id. at 382.
The problem here is that (as the Majority quite correctly notes) we are bound by the jury’s pronouncement that it imposed the death penalty because no mitigating circumstances were proven. See Maj. Op. at 385-86. The jury could not have come to that conclusion without ignoring evidence of mitigation that was an uncontested part of the record. I simply do not understand how we can be bound by the jury’s explanation of why it imposed the *398 death penalty and conclude anything other than that evidence of mitigation was ignored. The fact that there was obvious confusion when the verdict slip was handed to the judge does not allow us to spaekle over the fact that the jury ignored evidence of a mitigating circumstance that the law required be considered and weighed against the aggravating circumstances. On the contrary, we should be especially reticent to allow a death sentence to stand given the confusion that is so apparent on this record.
The exchange between the court and jury foreperson at the penalty phase is as revealing as it is troubling.
THE COURT: Ladies and gentlemen, I’m reviewing the verdict slip that you have provided for me. Let me just double check something. I think that I find there is an inconsistency on this, and I’m going to have to ask you to take a moment to go back and reconsider this. I’m dealing specifically with part 2 b, in which you must check off either one or two as it is applicable. You didn’t check off either one of them. I think I understand which one it is, I don’t know that it’s necessary for you to leave the jury box. I’m going to return this to you, to the foreman so that he can look at that, and determine — and make a determination. Look carefully, if you feel that you have to go back in the jury room, that will be perfectly fine. I would suggest before you do that, reread both one and two to make sure which one you’re checking off so you feel satisfied on that.
(The verdict is handed to the foreman and returned back to the judge.)
THE FOREMAN: From my understanding, that’s the way it should be, Your Honor.
THE COURT: All right. Having cheeked off two, you crossed out the one part.
THE FOREMAN: We had a list in there, Your Honor, I didn’t know whether we should also list those.
THE COURT: Do I take it that should be in there then?
THE FOREMAN: No, it should not.
THE COURT: Well—
THE FOREMAN: We had a list that we dealt with with [sic], if you would like us—
THE COURT: I don’t want you to go into that. If you do not have two down there, then logically — and I don’t mean to suggest which is correct on this, but logically, you would be filling out number one, rather than two.
Give that back to the foreman.
(The verdict slip is returned to the foreman.)
THE FOREMAN: You’re correct, Your Honor. Should I change it?
THE COURT: I would ask you then, if that is the case, whether you wish to consult with the other members of the jury or make the correction?
THE FOREMAN: No, I think we understand. Yes, I can make the change. There would be no problem.
THE COURT: All right.
THE FOREMAN: Do you want me to change it on this?
THE COURT: Yes. Thank you. Now you may leave that with the foreman.
Mr. Foreman, I understand from your submission of the verdict slip that you have reached a determination of sentence, is that correct?
THE FOREMAN: Yes, we have, Your Honor.
THE COURT: And what is that sentence?
THE FOREMAN: Penalty of death.
THE COURT: And on what basis?
*399 THE FOREMAN: On the basis of item number one, that there is at least one aggravating circumstance and mitigating — no mitigating circumstances.
THE COURT: What did you find as the aggravating circumstance?
THE FOREMAN: That the victim was held for ransom, that there was felony kidnapping, it was planned, and ultimately, the victim did die.
THE COURT: Thank you. You may pick up the verdict slip. You may be seated, Mr. Foreman.
App., p. 4520-21 (emphasis added).
The jury was then polled and the jurors unanimously agreed that there were no mitigating circumstances to be considered.[4] Thus, I am not persuaded by the Majority’s reliance on a line of cases which hold that the Eighth Amendment is not violated as long as jurors are allowed to consider and give effect to any mitigating circumstance that any juror believes is established by a preponderance of the evidence. Here, since the jury concluded that there were no mitigating circumstances, it is clear that the jurors ignored a mitigating circumstance that was established as a matter of law, and had to be considered. I can find no Supreme Court case upholding a death sentence under such circumstances.
The Majority attempts to squeeze the genie back into the Buchanan bottle by assuming that the foreman simply made a mistake in crossing out “first offense” on the verdict form. Maj. Op. at 384 (stating that “[t]he foreman crossed out ‘first offense,’ but mistakenly placed the check mark in the “weighing” box where, ... it should not have been placed.”). Such speculation would have merit had the foreman not explicitly stated that there were no mitigating factors, and the jury not unanimously agreed when polled immediately after hearing the foreman’s explanation for this sentence. See supra at pp. 398-99. I therefore have a hard time agreeing that the jury considered a fact no juror believed existed. My colleagues’ contrary view reduces the time-honored tradition of polling a jury to nothing more than a ritualistic callisthenic. We cannot both accept the jury’s explanation and ignore it too by speculating around it. If we accept what the jury unanimously declared, as the Majority says we must, it is clear that the jury ignored constitutionally relevant evidence. Moreover, even if we could ignore the record and breathe some ambiguity into what happened here, any doubt must be resolved in favor of life, not death. See Andres v. United States, 333 U.S. 740, 752, 68 S.Ct. 880, 92 L.Ed. 1055 (1948) (“In death cases doubts such as those presented here should be resolved in favor of the accused.”); Penry, 492 U.S. at 328, 109 S.Ct. 2934 (“Our reasoning in Lockett and Eddings thus compels a remand for resentencing so that we do not risk that the death penalty will be imposed in spite of factors which may call for a less severe penalty. When the choice is between life and death, that risk is unacceptable and incompatible with the commands of the Eighth and Fourteenth Amendments.”) (internal citations and quotations omitted).
When the instructions are read in their entirety, it is clear that jurors believed they were permitted to consider any evi *400 dence of mitigation only after that evidence had been proven by a preponderance of the evidence. That is what the judge told them and there is certainly nothing wrong with that statement of the law. However, the prosecutor had decided to argue that there was no evidence of mitigation and the jury was never instructed about the effect of the stipulation between Copenhefer and the Commonwealth.[5] Thus, the court’s failure to instruct on the significance of a stipulation allowed the jury to ignore evidence of mitigation under these circumstances.
Our Eighth Amendment inquiry must focus on “whether there is a reasonable likelihood that [this] jury ... applied the challenged instruction in a way that prevented] the consideration of constitutionally relevant evidence.” Boyde, 494 U.S. at 380, 110 S.Ct. 1190. This inquiry could not be easier because the jury said that it did precisely that. Therefore, we should conclude that the instruction allowed the jury to ignore constitutionally relevant evidence that had been proven as a matter of law. It did so by not informing the jury that the law regards a stipulated fact as proven after the prosecutor decided to argue the absence of any mitigation. See id; Abdul-Kabir v. Quarterman, 550 U.S. 233, 259, 127 S.Ct. 1654, 167 L.Ed.2d 585 (2007) (“The jury must have a ‘meaningful basis to consider the relevant mitigating qualities’ of the defendant’s proffered evidence.”) (quoting Johnson v. Texas, 509 U.S. 350, 369, 113 S.Ct. 2658, 125 L.Ed.2d 290 (1993)).
My colleagues attempt to rationalize this paradoxical penalty hearing by assuming that this jury would have imposed the death penalty anyway and merely did what it intended. They reason that “the record strongly suggests that [the jury] considered the mitigating evidence and decided that none of that evidence was qualitatively sufficient to constitute a mitigating circumstance.” Maj. Op. at 387. However, there is a difference between deciding that evidence is not sufficient to constitute a mitigating circumstance and deciding that there is no evidence of mitigation. The distinction is far more than a linguistic complexity; it is a distinction with a constitutional difference.
My colleagues also believe that “it is difficult [to] imagine that the outcome of this case would have been different if the jury had been specifically instructed to find Copenhefer’s lack of a prior record was a mitigating circumstance.” Id. at 387. Perhaps, but the solemnity and finality of the death penalty should not afford the luxury of such harmless error speculation. “[W]e may not speculate as to whether the [sentencer] actually considered all of the mitigating factors and found them insufficient to offset the aggravating circumstances.... [Instead we are required to] remove any legitimate basis for finding ambiguity concerning the factors actually considered by the [sentencer].” Eddings, 455 U.S. at 119, 102 S.Ct. 869 (O’Connor, J., concurring). The Majority’s speculation is particularly dangerous because it ignores the jury’s own explanation *401 of its sentence.[6] Moreover, the majority’s hypothesis is no more likely than the possibility that at least one juror would have been unwilling to have Copenhefer killed for his first criminal offense no matter how wanton his conduct was.[7]
The majority’s hypothesis about what happened here is little more than restorative speculation that attempts to re-write this confused record. However, despite the obvious confusion, some incontrovertible facts remain. The prosecutor, after stipulating to the existence of a mitigating factor, argued that the defendant should be put to death because there were no mitigating factors “of merit” on the record; the trial court then sat by and refused to explain to the jury that one mitigating factor had been established as a matter of law — -and was therefore “of merit” and had to be considered; instead, the trial court told the jurors that they must weigh any mitigating factors that were proven. The jurors then imposed the death penalty based upon their unanimous conclusion that, contrary to stipulated evidence, no mitigating factors had been proven.
Unless we take it upon ourselves to completely ignore the verdict slip and the jury’s unanimous explanation for sentencing Copenhefer to be executed, we must conclude that the jury either ignored the jury instruction and refused to find evidence of mitigation despite the court’s charge, or that the jury accepted the charge but took it upon itself to ignore a proven fact that the law required be weighed in determining the sentence. It does not matter which of these two possibilities occurred here because one is as arbitrary and, constitutionally improper as the other. As I stated at the outset, “[t]he sentencer may not refuse.to consider ... any relevant mitigating evidence.” Eddings, 455 U.S. at 114, 102 S.Ct. 869.
IV.
I do not want to conclude without acknowledging that it may well be that the jury imposed this sentence because' the jurors wanted Copenhefer to pay for his crime with his own life, just as my colleagues speculate. Given the circumstances here, the jury could certainly have reached that conclusion after properly considering all of the evidence of his guilt, the aggravated circumstances of.his crime, and weighing them in a rational manner against the evidence of mitigation. However, the Eighth Amendment does not allow a jury to ignore evidence of mitigation and sentence someone to death just because the jury thinks that he deserves to die. Yet, according to the record, that is what happened here. In upholding the death penalty on this record, we are not *402 only assuming the role of the circus hand who walks behind the elephant with a shovel, we are establishing precedent that will surely undermine the very significant legal protections that polling the jury is supposed to afford the accused.[8]
Imposing the death sentence without considering evidence of mitigation is precisely the arbitrary result the Eighth Amendment guarantees against. See Mills, 486 U.S. at 375, 108 S.Ct. 1860 (“[F]ailure to consider all of the mitigating evidence risks erroneous imposition of the death sentence, in plain violation of Lockett. ...”) (internal citations omitted). The jury charge that was given would not have resulted in an unconstitutional sentence if the jury concluded that there was evidence of mitigation but then proceeded to give it insufficient weight to counterbalance the aggravating factors of the crime. See Eddings, 455 U.S. at 114-15, 102 S.Ct. 869 (“The sentencer ... may determine the weight to be given relevant mitigating evidence. But [the sentencer] may not give it no weight by excluding such evidence from [its] consideration.”). However, that is not what the jury said it did; we cannot change that.
V. CONCLUSION.
In arguing that this death sentence cannot be supported on this record I do not, of course, ignore or minimize the barbarity of Copenhefer’s crime or the overwhelming evidence of his guilt. Much has been said and written about the dangers of executing an innocent defendant; this is not such a case. Having served on this court for nearly 20 years, and having presided over hundreds of homicide trials as a state trial judge for more than 10 years — 3 of which consisted of nothing but homicide trials — I can truthfully say that I cannot recall a case where the evidence against a defendant was stronger than the evidence the Commonwealth marshaled against Copenhefer. He is clearly guilty; but, of course, that is not the issue in this case.
It is precisely those crimes that most disgust us that most require we remain vigilant in deciding issues that arise under the Eighth Amendment’s protection against arbitrary punishment. Those are the crimes that pose the greatest danger that jurors will allow reason to be supplanted by passion. “Arbitrary” sentences also include sentences imposed in violation of the law, and that is what the Eighth Amendment prohibits. Because it is clear that the sentencing here was in violation of the Eighth Amendment’s guarantee against the arbitrary imposition of the death penalty, we should affirm the District Court’s order vacating this death sentence. See Mills, 486 U.S. at 384, 108 S.Ct. 1860.
*403 [[Image here]]
*404 [[Image here]]
*405 [[Image here]]

. It is not at all clear what a "true mitigating circumstance” or one of "merit” is since the mitigating factor that was stipulated to is a meritorious mitigating circumstance as a matter of law. It would have been appropriate to argue that that mitigating circumstance was outweighed by the evidence of aggravating circumstances here, but that is not what the prosecutor said; and it is apparent from subsequent events that that is not how the jury interpreted this troublesome — if not mischievous — argument.

. In doing so, I in no way intend to suggest that the court emphasized any particular part of the charge through inflection or tone when it instructed the jury. Rather, as I explain below, I emphasize portions of the text only to highlight language that allowed the jury to ignore a mitigating circumstance that had been established as a matter of law.

.The majority also asserts that "[t]here were no objections to the instructions, nor any suggestions for correction or additions.” Maj. Op. at 383. I cannot agree. Copenhefer’s counsel argued for an instruction regarding the significance of the stipulation. When prompted by the trial court, Copenhefer’s counsel asserted:
But it is a mitigating factor per se by the stipulation, it has been proven by that stipulation by a preponderance of the evidence. In discussing the jury instructions yesterday, one of the things we said was if you find something by a preponderance of the evidence, you cannot ignore it, you cannot dismiss it. And especially in light of this particular mitigating circumstance which is spelled out specifically in the Statute [sic], it is a mitigating circumstance which has been proven. Now, they can again decide *396 it's not worth much weight, but they cannot ignore it. Appx., p. 004503

. For ease of reference, I have attached the verdict slip. It is clear that whatever confusion existed regarding the verdict slip, ultimately, the changes made to the verdict slip reflect the pronouncement of the jury foreman (and that of each and every other juror) that no mitigating factor was found to exist but aggravating factors did exist and, therefore, death was mandatory.

. Over Copenhefer’s objection, the trial court found that it could not compel the jury to find the stipulated fact as a mitigating factor though it admitted it would be problematic if the jury refused to find the existence of a mitigating factor based on the stipulation. Appx., p. 004504 (The Court: "[T]he stipulation does not mean that the jury must accept it. I anticipate they will, of course, but I don't think I can compel they accept it as being something that they must put down as a mitigating factor. [Defense Counsel]: That's fine. In fact, [if] the verdict of death comes back, and there's an indication that they haven’t accepted that, then we have a whole new problem. The Court: Then we have a problem, I agree with you.”).

. This case is unlike Mills v. Maryland, 486 U.S. 367, 381, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988). There, the Court staled that ”[t]here is, of course, no extrinsic evidence of what the jury in this case actually thought....” Here, the jury told the judge what it thought. Since no mitigating factor existed, and there was evidence of several aggravating factors, the death sentence had to be imposed. In Mills, the Court set a death sentence aside explaining: "Our reading of [the judge’s instruction and verdict form] leads us to conclude that there is at least a substantial risk that the jury was misinformed.”; see also Eddings, 455 U.S. at 119, 102 S.Ct. 869 (O’Connor, J., concurring). Here, that risk is a certainty.

. We must be confident that the trial court’s instruction did not "foreclose the jury's consideration of any mitigating evidence.” Buchanan, 522 U.S. at 277, 118 S.Ct. 757. I can have no such confidence on this record. It is one that should remind us all that ”[e]volving standards of societal decency have imposed a correspondingly high requirement of reliability on the determination that death is the appropriate penalty in a particular case.” Mills, 486 U.S. at 384, 108 S.Ct. 1860.

. See United States v. Gibbs, 813 F.2d 596, 603 (3rd Cir.1987) (Aldisert, J., dissenting) (alluding to the court being “the circus hand following the ... elephant around the sawdust trail.”).